## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAROLYN MCCONNELL,
4212 South Orcas Street
Seattle, WA 98118

*Plaintiff,*

v.

NATIONAL LABOR RELATIONS
BOARD
1015 Half Street, SE.,
Washington, D.C. 20570

*Defendant.*

CIVIL ACTION NO. 25-0723

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

### PRELIMINARY STATEMENT

1.  This is an equitable action for declaratory judgment and injunctive relief to enable the Plaintiff, a GS-14 grade Field Attorney employed by the National Labor Relations Board ("NLRB"), to exercise her First Amendment right to communicate freely as a private citizen with representatives of federal agencies other than the NLRB, on behalf of the North Cascades Conservation Council ("N3C"), a non-profit organization, concerning environmental, wildlife, conservation, preservation, land-management, and land-use issues of public concern, without threat of discipline or criminal prosecution.

2.  Defendant subjected Plaintiff to a Letter of Counseling, a meeting with NLRB Ethics Office officials, and an "Ethics Memorandum." Through these actions, the NLRB

conveyed that her activities on behalf of the non-profit "likely violated" the criminal conflict of interest statute, 18 U.S.C. § 205. Plaintiff was also subjected to an investigation by the NLRB Inspector General, which found that she had violated 18 U.S.C. § 205, and a criminal referral, which was declined by the U.S. Attorney. All of these actions related to First Amendment activities she engaged in as a private citizen, wholly unrelated to her job, and which she conducted without referencing her position. Her communications and activities were unrelated to specific persons, or a discrete and identifiable class of persons, and did not amount to conflicts of interest subject to 18 U.S.C. § 205.

3. Defendant has misinterpreted 18 U.S.C. § 205 to apply to Plaintiff's activities, and Plaintiff seeks a declaratory judgment that she has not violated that provision.

4. Defendant's threats and vigorous attacks on Plaintiff's First Amendment rights are unconstitutional and constitute a prior restraint on future speech.

5. Defendant's interpretation of 18 U.S.C. § 205 to apply to Plaintiff's activities violates her First Amendment rights of free speech and association and her right to petition the Government.

## <u>JURISDICTION AND VENUE</u>

6. An actual case or controversy exists between Plaintiff and Defendant. This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331.

7. This Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

8.   Venue is proper in the District of Columbia, pursuant to 28 U.S.C. § 1391(e), as it is where Defendant resides.

## PARTIES

9.   Plaintiff Carolyn McConnell is a Field Attorney employed by the NLRB, currently at level GS-14, in the agency's Region 19 Field Office in Seattle, Washington, where she has resided since 2001. Plaintiff has held this position with the NLRB since 2012. Plaintiff's work involves investigating labor law violation cases, writing summaries and making recommendations to the Regional Director as to whether an alleged labor law violation has merit, and litigating unfair labor practice trials before an administrative law judge. Her job does not involve environmental, wildlife, conservation, preservation, land-management, or land-use issues in the North Cascades or anywhere.

10.  Defendant NLRB is a federal agency charged with the duty to safeguard employees' rights to organize, engage with one another to seek better working conditions, and choose whether or not to have a collective bargaining representatives negotiate on their behalf with their employer, or refrain from doing so.

## LEGAL BACKGROUND

### First Amendment of the United States Constitution

11.  In relevant part, the First Amendment of the Constitution states, "Congress shall make no law…abridging the freedom of speech, or of the press; or the right of the

people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. Amend. I.

12. In First Amendment doctrine, a law or government action has a "chilling effect" when an overly broad or vague law or rule, or other government action, has the effect of restricting or deterring the exercise of First Amendment rights.

13. Public employees retain First Amendment rights to speak on matters of public concern.

### United States Criminal Code, Representational Conflict of Interest Provision

14. Within Chapter 11 of the United States Criminal Code (entitled "Bribery, Graft, and Conflicts of Interest") lies a provision intended to prohibit conflicts of interest between federal employees' government positions and their representation in their personal capacities of outside parties in claims against the Government. 18 U.S.C. § 205 is entitled "Activities of officers and employees in claims against and other matters affecting the Government."

15. In relevant part, it subjects federal employees to criminal penalties if they act as an "agent or attorney for anyone before any department, agency, court, court-martial, officer, or civil, military, or naval commission in connection with any covered matter in which the United States is a party or has a direct and substantial interest." *Id*. § 205(a)(2). The statute defines "covered matter" as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter." *Id*. § 205(h). The statute does not define "particular matter."

16. Because § 205 is a criminal statute, and because it has the potential to infringe upon the rights of employees under the First Amendment by restricting their freedom of speech, association, and right to petition the Government, it should be interpreted in a manner to ensure that the statute gives fair notice of its coverage and that constitutional questions may be avoided.

16. The U.S. Office of Government Ethics ("OGE") leads and oversees the executive branch ethics program. It has issued the "Standards of Ethical Conduct for Employees of the Executive Branch," found at 5 C.F.R. 2635.

17. These regulations do not define "particular matter" specifically as used in 18 U.S.C. § 205, but do so with regard to 18 U.S.C. § 208, which prohibits employees from participating *in an official capacity* in *inter alia* a "particular matter" in which they have a personal financial interest. The definition is:

> The term particular matter encompasses only matters that involve deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons. Such a matter is covered by this subpart even if it does not involve formal parties and may include governmental action such as legislation or policy-making that is narrowly focused on the interests of such a discrete and identifiable class of persons. The term particular matter, however, does not extend to the consideration or adoption of broad policy options that are directed to the interests of a large and diverse group of persons. The particular matters covered by this subpart include a judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, or arrest.

5 C.F.R. 2635.402(b)(3). This definition is also repeated at 5 C.F.R. 2640.103(a)(1).

*See also*, 5 C.F.R § 2640.102(l) defining "particular matter involving specific parties" to include only matters involving a specific party or parties and 5 C.F.R §

2640.102(m),  defining "particular matter of general applicability" to mean "a particular matter that is focused on the interests of a discrete and identifiable class of persons, but does not involve specific parties."

18.  The leading case on the application of 18 U.S.C. § 205, *Van Ee v. EPA*, 202 F.3d 296 (D.C. Cir. 2000), finds that "Congress did not intend § 205 to act as a general gag on federal employees," and that "it is to apply only to matters in which the governmental decision at stake is focused on conferring a benefit, imposing a sanction, or otherwise having a discernable effect on the financial or similarly concrete interests of discrete and identifiable persons or entities." *Id.* at 302-03. The court noted that these are situations in which a federal employee "could be perceived as having divided loyalty and as using his or her office or inside information to corrupt the government's decision-making process." *Id.* at 303 (footnote omitted).

19.  Each federal agency is required to appoint a Designated Agency Ethics Official ("DAEO") who is an employee of that agency with primary responsibility for directing the agency's ethics program and coordinating with the OGE. 5 C.F.R. 2638.104. Among other responsibilities, the DAEO is to provide advice and counseling to employees regarding government ethics laws and regulations. 5 C.F.R. 2638(c)(4).

**FACTUAL BACKGROUND**

20.  Plaintiff, acting as a private citizen entirely outside of her position at the NLRB, is a long-standing member of the North Cascades Conservation Counsel ("N3C"). N3C

is an independent, all-volunteer organization dedicated to protecting Washington State's North Cascades. N3C supports expanding the North Cascades National Park, establishing new Wilderness Areas, protecting wildlife, promoting responsible forest management and environmentally sound recreational use in wild areas, and protecting old-growth forests.

21. Plaintiff currently serves as N3C's Vice President of the Board of Directors, a position she has held for about 10 years. She has been on the N3C Board of Directors for over 25 years and included that position on her resume submitted to the agency at the time she was hired by the NLRB in 2012.

22. The greater North Cascades eco-system is comprised of North Cascades National Park, Ross Lake National Recreation Area, Lake Chelan National Recreation Area, areas within National Forests, designated Wilderness Areas, and state conservation areas, as well as unprotected land. The National Park Service ("NPS") manages national parks and national recreation areas, and the United States Forest Service ("USFS") also manages public lands within the North Cascades of interest to N3C. NPS and USFS will be collectively referred to as the "other federal agencies."

23. One of the most significant functions of N3C Board Members is to communicate the views and official positions of the organization to the federal agencies responsible for implementing policies affecting the conservation interests that N3C promotes. Consequently, N3C interacts frequently with NPS and USFS. Given that the NLRB's mission – to protect workers' rights – falls far afield of N3C's policy interests, N3C has never communicated with the NLRB.

24. Because of the complete divergence between the work of the NLRB and issues surrounding management and staffing of public lands and other environmental issues in the North Cascades, Plaintiff's position at the NLRB does not provide her any inside information relevant to these issues or any potential to corrupt the process of decision-making about them by the NPS and the USFS.

25. On February 14, 2024, Plaintiff emailed NLRB Regional Director Ronald Hooks to request permission to publish an op-ed on behalf of N3C, regarding the lack of park rangers at Stehekin Park, which is part of the Lake Chelan National Recreation Area, during the summer months of 2024. Specifically, the piece highlighted how the visitors center, which used to be well-staffed and provide services including search and rescue and emergency medical care, would be entirely closed due to lack of rangers, even as visitation had increased by 40% in the past decade. The piece concluded with N3C asking then-Department of the Interior Secretary Deb Haaland and then-National Park Service Director Chuck Sams to "fully staff Stehekin with rangers this summer, keep the Golden West Visitors Center open, and commit to providing these services as the park has done for the last 55 years."

26. Plaintiff attached a draft of the op-ed to the email. The original draft op-ed attached to the email cited and linked to a petition, which sought signatures to support the above-referenced NPS actions.

27. Plaintiff clarified she was not certain whether she needed permission to publish the op-ed, but requested it anyway out of an abundance of caution.

28. Later that same day, Regional Director Hooks sent an email to the NLRB Ethics Office, which includes the NLRB DAEO and subordinate ethics officials, stating the following:

> Please see attached request for approval of publication of op-ed from Carolyn McConnell. Since it appears that this paper is being presented in Carolyn's personal capacity and she is not being paid it would not be considered outside employment and would not require my approval. Since Carolyn would like to present the article for publication in the next few days, I would like to so inform her. Please let me know if you disagree. Thanks!

29. On February 16, 2024, Regional Director Hooks sent an email to Plaintiff that contained a response from the Ethics Office:

> …We would like to take a little time to also consider whether the statute [18 U.S.C. § 205] would be implicated if she puts her name on an article that she wrote on behalf of an organization that asks the federal government to take a specific action, which seems to be present in the last paragraph. It is our job to be aware of these risks and take steps to make sure Carolyn doesn't commit an ethics violation. However, if she wants to move forward immediately, please make sure that she understands this risk.

30. The referenced law is the section of the United States criminal code explained *supra* at ¶¶14-18.

31. On February 21, 2024, Regional Director Hooks wrote to the Ethics Office:

> I have spoken with Carolyn, and it appears that for deadline reasons that, unless she is prohibited from doing so, she is willing to take the risk and plans to submit her op-ed paper so it doesn't seem it would be worth your while to expend the time doing extensive research. Let me know if [you] need anything else. Thanks!

32. On February 23, 2024, Regional Director Hooks forwarded an email to Plaintiff from Lori Ketcham, Associate General Counsel at the Ethics Office. The email stated the following:

> Hi Ron – I am not able to advise Carolyn to go forward and submit her papers as I would need to conduct research before giving a recommendation, but if she has done so already, please let me know so that we can provide some follow-up to help her avoid violations when submitting the petition to the federal government. To provide that guidance, we would need to know the timeframe for submitting the petition after the Op-ed has been published.

33. On February 26, 2024, Plaintiff responded to Regional Director Hooks's February 23rd email by writing:

> The Seattle Times has accepted the op-ed for publication. They have told us it will run "the week of February 26," but haven't been more specific. The N3C expects to send the petition to the secretary and the director sometime in the second half of this week.

34. Plaintiff did not receive a response from anyone at the NLRB or Ethics.

35. On February 29, 2024, the President of N3C submitted the petition, entitled "Tell the National Park Service: Don't abandon Stehekin!", to the NPS. Plaintiff's signature was one of hundreds of signatures. Plaintiff did not identify herself as an employee of the NLRB or the federal government with her signature.

36. On March 4, 2024, The Seattle Times ran the op-ed co-authored by Plaintiff.[1] The final version of the op-ed did not mention nor provide a link to the petition, which

---

[1] Phil Fenner and Carolyn McConnell, *Imagine summer in Stehekin without park rangers*, THE SEATTLE TIMES (Mar. 4, 2024), https://www.seattletimes.com/opinion/imagine-summer-in-stehekin-without-park-rangers.

had already been submitted. Further, the op-ed did not mention that Plaintiff was an employee of the NLRB or the federal government.

37.  On March 5, 2024, Plaintiff met, at the request of Kathryn Burow, Senior Ethics Specialist at the NLRB Ethics Office, with Ms. Burrow and Jamal Allen, Special Ethics Counsel at the NLRB Ethics Office, via Teams, with Sarah Burke attending as Plaintiff's union representative, to discuss Plaintiff's service on the N3C board, and the relevance of 18 U.S.C. § 205 to her activities.

38. At that meeting, the NLRB ethics officials stated that by submitting a petition or other documents to federal officials or attending in-person meetings with NPS on behalf of N3C, Plaintiff ran the risk of violating 18 U.S.C. § 205. The ethics officials advised Plaintiff not to communicate with nor appear before any federal government agency on behalf of a third party such as N3C, or if she decided to do so despite that risk, to seek advice of the NLRB Ethics Office ahead of any such meeting and provide an overview of the matters to be discussed so that the Ethics Office could help determine the risk of a § 205 violation.

39. On April 8, 2024, Allen issued a memo to Plaintiff entitled "Risks of violating 18 U.S.C. § 205 in your role as Vice President of North Cascades Conservation Council's Board of Directors," which concluded that submitting a petition to the Secretary of Interior regarding staffing at Stehekin and keeping the visitor center open was a "particular matter" under 18 U.S.C. § 205. The memo also stated that Plaintiff should seek guidance from the Ethics Office before submitting any writing to the government on behalf of NC3. It recommended against attending any in-person

meetings with government officers as a representative of N3C due to the risks of violation 5 U.S.C. § 205. It continued that if Plaintiff decided to participate in such meetings despite the risk of a criminal violation, she should seek fact-specific guidance from the Ethics Office to evaluate concerns under Section 205. It also stated that the work Plaintiff provided to N3C and her service on its Board of Directors was "outside employment" requiring agency approval.

40. On April 22, 2024, Plaintiff emailed the NLRB Ethics Office to ask if meeting in person or virtually with National Park Service officials on behalf of N3C to discuss re-opening of the Golden West Visitor Center would be permissible.

41. On April 23, 2024, Regional Director Hooks provided "provisional" approval to Plaintiff to serve on the N3C board, "provided you request advice from the [NLRB] Ethics Office before you communicate in writing or in person with the federal government on behalf of N3C so that they can provide fact specific guidance as to whether your prospective conduct is prohibited by statute or Federal regulation, 5 CFR part 2635, for example 18 U.S.C. § 205."

42. On April 24, 2024, Allen emailed Plaintiff to state that he "recommend[ed] that [she] not participate in any meetings [with Park Service about the Golden West Visitor Center] because by doing so and identifying [her]self as an officer or director of [N3C] [she ran] the risk of violating 18 U.S.C. § 205." No such meeting took place, but the email served as a warning to Plaintiff that she would run the risk of a criminal violation by participating in such meetings with the NPS.

43. On May 1, 2024, Allen issued a memo to Regional Director Hooks entitled "Guidance Regarding Request for Outside Employment (Board of Directors, North Cascades Conservation Council, Field Attorney Carolyn McConnell)," stating that Plaintiff's service on the N3C required approval, which had been given (by Regional Director Hooks on April 23, 2024), and stating, "if Carolyn wishes to communicate directly with the federal government on behalf of [N3C] we ask that she request advice from the [NLRB] Ethics Office beforehand so that we may provide fact-specific guidance regarding what is, or isn't, a covered matter under the statute."

44. On August 12, 2024, Plaintiff received a voice message from James Tatum, from the NLRB Office of Inspector General ("IG" or "OIG"), informing Plaintiff that he was conducting an investigation into her conduct related to N3C. Plaintiff spoke with him later that day and he verbally informed Plaintiff of the following:

   a. The NLRB Ethics Office had made a criminal referral to the U.S. Attorney's Office regarding Plaintiff's activities in connection with the N3C. However, the U.S. attorney declined to initiate prosecution.

   b. The NLRB Ethics office had also made a referral to the NLRB's OIG and as a result, the IG's office was conducting a formal administrative investigation.

   c. The matter that the OIG was investigating was Plaintiff's publication of an op-ed and circulation of a petition regarding Park Service staffing in the North Cascades National Park.

    d.  This was the matter he would discuss with Plaintiff during an interview scheduled for August 15, 2024, and the interview would be transcribed by a court reporter.

45. On October 15, 2024, Regional Director Hooks emailed Plaintiff the report on the IG's investigation of Plaintiff dated October 7, 2024, and a Letter of Counseling, dated October 15, 2024. The IG report stated that Plaintiff engaged in misconduct in violation of 18 U.S.C. 205(a)(2) by representing an organization before the Department of Interior and the NPS.

46. The Letter of Counseling stated that Plaintiff likely violated 18 U.S.C. 205(a)(2).

47. Plaintiff, in communications with the other federal agencies, has never attempted to influence the other federal agencies with respect to matters having any relation to her work as a Field Attorney for the NLRB, or as to any matters focused upon the interests of specific persons, or a discrete and identifiable class of persons.

48. Plaintiff desires to continue to communicate with the other federal agencies on behalf of N3C with the goal of influencing federal policy on matters of general public concern unrelated to her work for the NLRB or to the interests of any specific persons or class of persons.

49. As a result of the NLRB's Letter of Counseling, the meeting with NLRB Ethics Office officials, the "Ethics Memorandum," the investigation by the NLRB Inspector General, and the criminal referral, Plaintiff has ceased engaging in the following activities:

    a.  Submitting comments to NPS or USFS on behalf of N3C for Environmental Assessments and Environmental Impact Statements.

    b.  Meeting as an N3C representative with NPS or USFS representatives.

    c.  Stepping in as Acting N3C President when the President is unavailable, which is a duty of the Vice President, and therefore may require Plaintiff to step down as Vice President.

    d.  Submitting petitions to federal agencies on behalf of N3C.

    e.  Writing or signing op-eds on behalf of N3C.

    f.  Testifying at hearings on behalf of N3C, such as those currently upcoming on the North Fork Stillaguamish timber projects (Mt. Baker-Snoqualmie National Forest), Midnight timber sale (Okanogan-Wenatchee Forest), or the Northwest Forest Plan amendments.

50. As a result of Plaintiff's inability to participate freely and openly in N3C without fear that the NLRB will view her as having violated 18 U.S.C. § 205 or its ethics regulations, and possibly take action accordingly, Plaintiff's long-standing efforts to affect public policy on general matters of public concern unrelated to specific persons, or a discrete and identifiable class of persons, and unrelated to her work for the NRLB, has been severely limited.

51. NLRB's interpretations of 18 U.S.C. § 205 and federal ethics regulations have drastically curtailed Plaintiff's exercise of her First Amendment rights. Plaintiff is unable to communicate, without fear of discipline or criminal penalty, with other federal agencies responsible for implementing federal policy on important matters

of public concern that are unrelated to specific persons, or a discrete and identifiable class of persons, and have nothing to do with Plaintiff's work for the NLRB, but are central to Plaintiff's beliefs on matters of public importance.

52. Defendant has wrongfully deprived Plaintiff of several of her most valued rights: the right to speak publicly on matters of public concern, the right to petition her government for redress of grievances, and the right to associate with like-minded citizens to advance mutually shared social and political goals.

## CAUSES OF ACTION

53. Plaintiff incorporates the allegations in the preceding paragraphs as though fully set forth herein.

## First Claim:  Plaintiff Has Not Violated 18 U.S.C. § 205

54. Plaintiff's communications with the other federal agencies that were made on behalf of N3C with the intent to influence policies of the other federal agencies, as described above, do not violate 18 U.S.C. § 205. Plaintiff seeks a declaratory judgment to that effect.

55. Plaintiff's communications advocating for increased staffing and protection of public lands on behalf of N3C are not subject to 18 U.S.C. § 205 because they are not "covered matters" under the statute. 18 U.S.C. § 205(a)(2).

56. Because Plaintiff's communications are not a request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, or

arrest, they would only be covered by § 205 if they are fall under "other particular matters."

57. Plaintiff's communications do not constitute "other particular matters" pursuant to 18 U.S.C. § 205 because they do not implicate the concerns § 205 was intended to address – the potential for conflict of interest or corruption of government decision-making processes. This is because the communications are uncompensated, do not identify her government employment, and do not have any relationship to Plaintiff's job duties, and therefore there is no potential for Plaintiff to use inside information or otherwise use her government position to improperly influence government decision-making.

58. Plaintiff's communications about public land management and staffing of federal facilities do not constitute "other particular matters" pursuant to 18 U.S.C. § 205, also because they do not meet the definition of "particular matters" in the OGE regulations as involving "deliberation, decision, or action that is focused upon the interests of specific persons, or a discrete and identifiable class of persons."

### Second Claim:  Defendant's Interpretation of § 205 to Apply to Plaintiff's Activities Violates the First Amendment

59. Plaintiff did not surrender her First Amendment rights by becoming a federal employee.

60. While government agencies may put some restrictions on employee speech to further their efficient functioning, employees' speech in their personal capacities on matters

of public importance that does not impede the functioning of the agency is generally protected.

61. Plaintiff's communications with the other federal agencies that were made on behalf of N3C, regarding wildlife, land-use, public lands staffing and environmental issues unrelated to her work for the NLRB are constitutionally protected because they relate to matters of public concern and will not impede the NLRB's efficient operation. There is thus no legitimate government interest in suppressing Plaintiff's speech that outweighs Plaintiff's fundamental First Amendment rights of speech, petition, and association.

62. Plaintiff seeks a declaration that the application of Section 205 to her activities would violate the First Amendment.

## **Third Claim: Plaintiff is Entitled to Injunctive Relief**

63. Defendant's determination that Plaintiff's communication with the other federal agencies on behalf of N3C violates a criminal statute, and Defendant's effort to have Plaintiff criminally prosecuted for these activities, have chilled Plaintiff's ability to exercise her First Amendment rights of freedom of speech and association and to petition her government. As a result, Plaintiff's involvement in N3C with respect to matters of public concern that are important to her has been greatly reduced to her detriment and the detriment of her community.

64. Plaintiff has no adequate remedy at law or in money damages for the deprivation of her First Amendment rights.

65. As set forth above, Plaintiff has suffered and continues to suffer irreparable harm as a result of the deprivation of her First Amendment rights.

66. Plaintiff is entitled to injunctive relief enjoining Defendant from taking or threatening to take disciplinary action or a criminal referral based on her activities with N3C.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

i. DECLARE that Plaintiff's past communications, namely the op-ed piece and petition, and any future communications intended to influence other federal agencies on behalf of N3C with respect public land management, staffing, and other environmental issues do not violate 18 U.S.C. § 205.

ii. DECLARE that Defendant's interpretation of 18 U.S.C. § 205 to prohibit Plaintiff's communications intended to influence other federal agencies on behalf of N3C with respect public land management, staffing, and other environmental issues violates her rights under the First Amendment to the United States Constitution.

iii. ENJOIN Defendant from taking or threatening to take any disciplinary action or criminal referral based upon communications or actions by Plaintiff intended to influence other federal agencies on behalf of N3C with respect to public land management, staffing, and other environmental issues.

iv. MAINTAIN jurisdiction over this action until Defendant is in compliance with 18 U.S.C. § 205(a)(2), the First Amendment, and every order of this Court;

19

v. GRANT reasonable costs and attorneys' fees and such additional relief to which Plaintiff may be entitled.

Respectfully submitted on March 12, 2025,

/s/ *Colleen E. Teubner*
Colleen E. Teubner, DC Bar # 90003410
Paula Dinerstein, DC Bar # 333971
Laura Dumais, DC Bar #1024007
Public Employees for Environmental
Responsibility
962 Wayne Ave, Suite 610
Silver Spring, MD 20910
(202) 464-2293

*Attorneys for Plaintiff*