UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROLYN MCCONNELL,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL LABOR RELATIONS BOARD,<br><br>Defendant. | Civil Action No. 25-723 (JEB) |

MEMORANDUM OPINION

Who may speak for the trees?  That is the question posed by Plaintiff Carolyn McConnell, a Seattle-based National Labor Relations Board attorney who, in her private capacity, penned an op-ed calling for federal governmental action in the State of Washington. Following the piece's publication in the *Seattle Times* and her other efforts on behalf of an environmental nonprofit, NLRB officials warned that her activities might violate a federal criminal statute and ethical provisions.  She then filed this suit against the NLRB to ensure that she could continue working on environmental causes during her employment.  Defendant now moves to transfer the case to the Western District of Washington.  Finding transfer appropriate, the Court will grant the Motion.

I.      Background

Plaintiff is a field attorney in the NLRB's Region 19 Field Office in Seattle.  See ECF No. 1 (Compl.), ¶ 9.  She has been with the NLRB since 2012 and has resided in Seattle since 2001.  Id.  She is also a long-time member and current Vice President of the North Cascades

1

Conservation Counsel (N3C), an independent, all-volunteer organization that works to protect the North Cascades, which lie in Washington. Id., ¶¶ 20–21.

On behalf of N3C, McConnell wrote an op-ed regarding the lack of summer 2024 park rangers at Stehekin Park, a section of the Lake Chelan National Recreation Area. Id., ¶ 25. The op-ed called on the Secretary of the Interior and National Park Service Director to "fully staff Stehekin with rangers this summer, keep the Golden West Visitors Center open, and commit to providing these services as the park has done for the last 55 years." Id. Plaintiff sent a draft of the piece, which included a link to an N3C-organized petition, to NLRB Regional Director Ronald Hooks for pre-publication review "out of an abundance of caution." Id., ¶¶ 25–27. When Hooks reached out to the NLRB Ethics Office for guidance, its response was indeterminate, essentially advising that McConnell would proceed at her own risk. Id., ¶¶ 28–34.

That she did. Plaintiff published with the *Seattle Times* in March 2024, though the piece did not mention her association with the NLRB or the federal government, nor did it include the link to the petition. Id., ¶ 36. McConnell also signed the petition, again without any indication that she is a federal employee or associated with the NLRB. Id., ¶ 35.

In April 2024, Plaintiff met with NLRB ethics officers at their request, and they told her that her activities with N3C might violate 18 U.S.C. § 205, which bars federal employees from advocating positions in front of the government. Id., ¶¶ 37–38. In addition, they advised her not to appear or communicate on behalf of a third party such as N3C in front of any federal government agency and that she should consult the Ethics Office whenever she wished to do so. Id.; see also id., ¶¶ 39, 43. When McConnell reached back out to the Ethics Office that same month to inquire whether meeting with NPS officials on behalf of N3C to discuss the re-opening

2

of the Golden West Visitor Center would be acceptable, id., ¶ 40, the Office advised against it. Id., ¶ 42.

In August 2024, Plaintiff was notified by James Tatum from the NLRB Office of Inspector General that OIG was investigating her conduct related to N3C. Id., ¶ 44. In a conversation later that day, Tatum informed McConnell that, among other measures, the NLRB Ethics Office had made a criminal referral to the U.S. Attorney's Office regarding her activities. Id. In October 2024, Hooks sent her the OIG's report and a Letter of Counseling, both of which mentioned potential criminal violations. Id., ¶¶ 45–46.

After receiving these communications, McConnell chose to stop participating in a number of N3C-related activities. Id., ¶ 49. She then filed this suit in March of this year seeking declaratory and injunctive relief. Id., ¶¶ i–v.

## II.     Legal Standard

Even if a plaintiff has brought her case in a proper venue, a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer [the case] . . . to any other district . . . where [the case] might have been brought." 28 U.S.C. § 1404(a). District courts have "discretion . . . to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

"To warrant transfer under § 1404(a), the movant must first show that the plaintiff could originally have brought the case in the transferee district." Ngonga v. Sessions, 318 F. Supp. 3d 270, 274 (D.D.C. 2018) (quoting Douglas v. Chariots for Hire, 918 F. Supp. 2d 24, 31 (D.D.C. 2013)). "The movant must also show that 'considerations of convenience and the interest of justice weigh in favor of transfer.'" Id. (quoting Douglas, 918 F. Supp. 2d at 31). This second

inquiry "calls on the district court to weigh in the balance a number of case-specific factors" related to both the private and public interests at stake. See Stewart Org., 487 U.S. at 29. The burden is on the moving party to establish that transfer is proper. See Ngonga, 318 F. Supp. 3d at 274.

**III.   Analysis**

The parties preliminarily agree that this case could have been brought in the Western District of Washington. See ECF Nos. 5 (Transfer Mot.) at 3; 6 (Transfer Opp.) at 4. As such, the threshold inquiry for § 1404(a) has been met. See Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv., 75 F. Supp. 3d 353, 356 (D.D.C. 2014).

What remains are the private- and public-interest factors that counsel whether a discretionary transfer is warranted under § 1404(a). "Those private-interest factors include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." Douglas, 918 F. Supp. 2d at 31 (citation omitted). "The public-interest factors include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home." Id. (citation omitted). The Court addresses each of these in turn, grouping them in places for ease of analysis.

    A.   Private-Interest Factors

        1.   *Plaintiff's Choice of Forum*

While courts generally defer to a plaintiff's choice of forum, "that deference is not always warranted where the plaintiff's choice of forum has no meaningful ties to the controversy, and where transfer is sought to a forum with which plaintiffs have substantial ties and where the

subject matter of the lawsuit is connected." Jimenez v. R&D Masonry, Inc., 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) (quotation marks omitted). "Indeed, when the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference." Id. (quotation marks omitted).

Plaintiff's preferred forum here is the District of Columbia, and the NLRB's headquarters and the attorneys for both parties are here. See Transfer Opp. at 5. McConnell also believes that the case is a national one that belongs here because it "implicates statutory interpretation impacting the free speech and association rights of NLRB employees" circumscribed by 18 U.S.C. § 205. See Transfer Opp. at 5–6.

While the NLRB's D.C. headquarters certainly means that venue is proper in this district, the link stops there. The District is not Plaintiff's home forum. All the facts, moreover, that gave rise to the controversy occurred in Washington State: McConnell's volunteering activities for N3C, the newspaper in which she published, as well as the interactions with NLRB leadership. See Compl., ¶¶ 28–45; Transfer Mot. at 4. As for the location of counsel, that "carries little, if any, weight in an analysis under § 1404(a)." Brown v. SunTrust Banks, Inc., 66 F. Supp. 3d 81, 85 (D.D.C. 2014) (quotation marks omitted). Finally, free speech and association rights flow throughout this nation, not only through the District of Columbia.

As such, the first factor does not offer McConnell much help.

    2.    *Defendant's Preference*

While a defendant's choice of forum is a consideration when deciding a § 1404(a) motion, it is not ordinarily entitled to deference. See Mahoney v. Eli Lilly & Co., 545 F. Supp. 2d 123, 127 (D.D.C. 2008). To the extent this factor carries any heft, however, it weighs in favor

of transfer because Plaintiff's preference is given such slight deference and in light of the balance of the other factors. Cf. In re Vitamins Antitrust Litig., 263 F. Supp. 2d 67, 69 (D.D.C. 2003).

   3. *Whether Claim Arose Elsewhere*

The Court next examines whether there is a nexus between the underlying transactions giving rise to the claim and the forum selected. See, e.g., Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 158 (D.D.C. 2008). When the material events that form the factual predicate of a plaintiff's claim did not occur in her chosen forum, transfer is favored. Intrepid Potash–N.M., LLC v. U.S. Dep't of Interior, 669 F. Supp. 2d 88, 95–97 (D.D.C. 2009). As all the predicate events in this case occurred in Washington, as discussed above, this factor also favors transfer.

   4. *Convenience of Parties, Convenience of Witnesses & Ease of Access to Sources of Proof*

The three remaining private-interest factors relate to the convenience of litigation. Both sides largely admit that these factors are neutral and thus contend that they maintain the balance in favor of their respective chosen forums. See Transfer Mot. at 6; Transfer Opp. at 6. The Court agrees. In sum, then, the private-interest factors favor Defendant's position.

  B. <u>Public-Interest Factors</u>

   1. *Transferee's Familiarity with the Governing Laws*

Both parties agree that the legal issues presented here could be handled competently by a federal court in either district. See Transfer Mot. at 7–8; Transfer Opp. at 7; see also, e.g., Nat'l Wildlife Fed'n v. Harvey, 437 F. Supp. 2d 42, 49 (D.D.C. 2006) (where "both courts are competent to interpret the federal statutes involved[,] . . . there is no reason to transfer or not transfer based on this factor"). This factor consequently weighs in favor of transfer or is neutral.

6

2.  *Relative Congestion of Court Systems*

Both sides also agree that the District of Columbia and the Western District of Washington face similarly congested dockets. See Transfer Mot. at 8; Transfer Opp. at 7. This factor is thus neutral as well.

3.  *Local Interest in Controversy*

Plaintiff asserts that the interest in this case is national, not local, because it concerns "the proper interpretation of statutory and constitutional provisions applicable to not only all NLRB employees, but all federal employees nationwide." Transfer Opp. at 7–8. She adds: "Any decision in this case would be applicable to all such employees and have constitutional implications, making this a controversy with national significance, not a localized issue." Id. at 8. That argument casts the powers of this Court in an oddly outsized light, however, as any district court's ruling does not bind any others. While McConnell marshals three cases in support of her contention that issues that might have "national" import should be resolved in the District of Columbia, id., they are distinguishable on their facts. All three cases challenged federal agency decisions with nationwide impact under the Administrative Procedure Act. See Oceana v. Bureau of Ocean Energy Mgmt., 962 F. Supp. 2d 70 (D.D.C. 2013) (challenging federal agencies' approval of oil and gas lease sales in Gulf of Mexico); Otay Mesa Prop. L.P. v. U.S. Dep't of Interior, 584 F. Supp. 2d 122 (D.D.C. 2008) (challenging critical-habitat determination by United States Fish and Wildlife Service for San Diego fairy shrimp); Sierra Club v. Van Antwerp, 523 F. Supp. 2d 5 (D.D.C. 2007) (challenging federal government's issuance of Clean Water Act permit).

Defendant, conversely, compellingly argues that the core of Plaintiff's claim concerns her activism in and for the State of Washington and that a local interest thus permeates the matter.

<u>See</u> Transfer Mot. at 7. The op-ed that ignited this litigation was published in a local paper, the subject of her activism is the alpine habitats nestled in Washington State, and the people whom she hopes to continue working with are all fellow Washingtonians. While the downstream effects of this case may reverberate across state lines, its nucleus sits in the Evergreen State.

As such, the public-interest factors also weigh in favor of transfer.

### IV.  Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order granting Defendant's Motion and transferring the case to the Western District of Washington.

<u>/s/ James E. Boasberg</u>
JAMES E. BOASBERG
Chief Judge

Date: <u>July 30, 2025</u>