1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CAROLYN MCCONNELL,

                        Plaintiff,

            v.

NATIONAL LABOR RELATIONS
BOARD,

                        Respondent.

CASE NO. C25-1546JLR

ORDER

## I.    INTRODUCTION

Before the court is Respondent the National Labor Relations Board's ("NLRB")

motion to dismiss Plaintiff Carolyn McConnell's complaint.  (MTD (Dkt. # 18); Reply

(Dkt. # 21).)  Ms. McConnell opposes the motion.  (Resp. (Dkt. # 20).)  The court has

//

//

//

1  considered the parties' submissions, the relevant portions of the record, and the

2  applicable law.  Being fully advised,[1] the court DENIES the NLRB's motion to dismiss.

3                           **II.    BACKGROUND**

4       This case arises from the NLRB's alleged retaliation against Ms. McConnell

5  following her decision to publish an op-ed in The Seattle Times and participate in a

6  petition calling on the Secretary of the Interior and the National Park Service ("NPS")

7  Director to "fully staff Stehekin[2] with rangers this summer, keep the Golden West

8  Visitors Center open, and commit to providing these services[.]"  (*See* Compl. (Dkt. # 1)

9  ¶ 25.)

10      Ms. McConnell is a Field Attorney for the NLRB's Region 19 Field Office in

11  Seattle and, for approximately 10 years, Vice President of the Board of Directors of the

12  North Cascades Conservation Council ("N3C").  (*Id.* ¶¶ 20-21.)  The N3C is an

13  independent, all-volunteer organization committed to protecting and conserving the North

14  Cascades in Washington state.  (*Id.* ¶ 20.)  In her role as a board member, Ms. McConnell

15  advocates on behalf of N3C to relevant federal agencies, such as the NPS and the United

16  States Forest Service ("USFS").  (*Id.* ¶¶ 22-23.)

17      To advocate for sufficient staffing at Stehekin Park, the N3C President submitted a

18  petition to the NPS on February 29, 2024, and Ms. McConnell published an op-ed in The

19  Seattle Times on March 4, 2024.  (*Id.* ¶¶ 25, 26, 35.)  Ms. McConnell signed the petition

20

21      _____

[1] The parties do not request oral argument, and the court concludes that oral argument is not necessary to decide the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

22      [2] Stehekin is part of the North Cascades National Park.

1  without identifying herself as an employee of the NLRB or the federal government.  (*See*
2  *id*. ¶¶ 35-36.)

3       On March 5, 2024, the NLRB Ethics Office ("Ethics Office") informed Ms.
4  McConnell that serving on the N3C board and advocating for the organization may
5  constitute a violation of 18 U.S.C. § 205, a federal criminal conflict of interest statute.
6  (*Id*. ¶¶ 37-38.)  In April 2024, the Ethics Office issued a memo to Ms. McConnell (1)
7  stating that submission of the petition was prohibited as a "particular matter" under
8  § 205; (2) advising Ms. McConnell to seek guidance from the Ethics Office before
9  further advocating on behalf of N3C to federal agency officials; and (3) informing Ms.
10  McConnell that further service on the N3C board required agency approval.  (*Id*. ¶ 39.)

11       In August 2024, the NLRB Office of Inspector General ("OIG") informed Ms.
12  McConnell that, based on the referral from the Ethics Office, it was investigating her
13  because she published the op-ed and circulated the petition.  (*Id*. ¶ 44.)  In October 2024,
14  the OIG issued an investigation report and a Letter of Counseling, both of which stated
15  that Ms. McConnell's N3C advocacy to federal agencies about the staffing of Stehekin
16  Park violated 18 U.S.C. § 205(a)(2).  (*Id*. ¶¶ 45-46.)  As a result, Ms. McConnell stopped
17  participating in a number of N3C-related activities.  (*Id*. ¶ 49.)

18       On March 12, 2025, Ms. McConnell filed the instant suit seeking declaratory and
19  injunctive relief that she has not violated § 205 and that the NLRB's interpretation of
20  § 205 to the facts of her case violates the First Amendment.  (*See generally* Compl.)

21  //

22  //

1

### III.    DISCUSSION

2      The court first discusses the relevant standard of review, and then turns to the

3  NLRB's motion to dismiss.

4  **A.    Standard of Review**

5      Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

6  "fail[s] to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6); *see*

7  *also* Fed R. Civ. P. 8(a)(2) (requiring that the plaintiff to provide "a short and plain

8  statement of the claim showing that the pleader is entitled to relief").  Under this

9  standard, the court construes the allegations in the complaint in the light most favorable

10  to the nonmoving party, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 416 F.3d

11  940, 946 (9th Cir. 2005), and asks whether the claim contains "sufficient factual matter,

12  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

13  556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

14  (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that

15  allows the court to draw the reasonable inference that the defendant is liable for the

16  misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The court "is to take all

17  well-pleaded factual allegations as true and to draw all reasonable inferences therefrom in

18  favor of the plaintiff."  *Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658,

19  663 (9th Cir. 1998) (citation omitted).

20  **B.    Motion to Dismiss**

21      The NLRB argues that the court should dismiss Ms. McConnell's complaint

22  because (1) her activities on behalf of N3C violate § 205 and (2) its application of § 205

to Ms. McConnell's activities does not violate the First Amendment.  (*See* MTD at 5.)

Ms. McConnell argues that the NLRB's interpretation of § 205 was (1) overly expansive

and (2) violated the First Amendment and constituted a prior restraint on future speech.

(*See* Resp. at 1.)   Drawing all reasonable inferences in favor of Ms. McConnell, the court

concludes that she plausibly states a claim that she has not violated § 205 and that the

NLRB's interpretation of § 205 to apply to her activities with N3C violates the First

Amendment.

     1.   <u>18 U.S.C § 205</u>

     Ms. McConnell's first claim is for a declaratory judgment that she has not violated

§ 205.  (Compl. ¶¶ 54-58.)  Section 205(a)(2) prohibits federal employees from "act[ing]

as agent or attorney for anyone before any department, agency, court, court-martial,

officer, or civil, military, or naval commission in connection with any covered matter in

which the United States is a party or has a direct and substantial interest[.]"  18 U.S.C. §

205(a)(2).  To state a claim for violation of § 205, a party must show that (1) a

government employee acted as an agent or attorney for someone else, (2) with intent to

influence, (3) before a U.S. department or agency, (4) in connection with a "covered

matter[,]" and (5) that such action was not an official duty.  18 U.S.C. § 205.  The parties

agree that at issue is whether Ms. McConnell's activities constitute a "covered matter"

under § 205(a)(2).  (MTD at 6; Resp. at 5.)  The parties further agree that (1) § 205(h)

defines "covered matter" as "any judicial or other proceeding, application, request for a

ruling or other determination, contract, claim, controversy, investigation, charge,

accusation, arrest, or other particular matter," and (2) the statute only proscribes Ms.

1  McConnell's activities if such activies are considered an "other particular matter." (*See*

2  MTD at 6; Resp. at 5); *see also* 18 U.S.C. § 205(h).

3      The statute does not define "particular matter." *See* 18 U.S.C. § 205.  The NLRB

4  acknowledges that "the boundaries of this definition are rarely litigated and have never

5  been ruled on by the Ninth Circuit" and asserts that *Van Ee v. E.P.A.*, 202 F.3d 296 (D.C.

6  Cir. 2000) forecloses Ms. McConnell's claims.  (MTD at 6-8.)  As in *Van Ee*, the scope

7  of matters covered by § 205(a)(2) is an issue of first impression in this circuit.  *See Van*

8  *Ee*, 202 F.3d at 301 (noting that the scope of matters covered by § 205(a)(2) was an issue

9  of first impression in the D.C. Circuit).  In *Van Ee*, the D.C. Circuit addressed whether

10     Congress intended § 205 to prohibit, on penalty of fine or imprisonment . . .
         a career federal employee from presenting the views of citizens' groups of
11       which the employee is a member, without receiving compensation, in
         response to requests for public comment on proposed land-use plans issued
12       by federal agencies other than the employing agency.

13  *Id*.  Looking to the text of the statute, the *Van Ee* court concluded that:

14     the limiting principle guiding Congress with respect to § 205 is that it is to
         apply only to matters in which the governmental decision at stake is focused
15       on conferring a benefit, imposing a sanction, or otherwise having a
         discernable effect on the financial or similarly concrete interests of discrete
16       and identifiable persons or entities.  These are situations in which a federal
         employee, acting as a private party's agent or attorney, could be perceived as
17       having divided loyalty and as using his or her office or inside information to
         corrupt the government's decisionmaking process.

18
19  *Id*. at 302-03.  The *Van Ee* court declined to address plaintiff's "contentions concerning

20  the First Amendment's application to § 205[.]"  *Id*. at 299.

21      The *Van Ee* court relied on related conflict-of-interest provisions as well as the

22  history and purpose of the statute as guidance in finding that the term "particular

1    matter[s]" under § 205(h) applies to matters where a federal employee's "representational

2    assistance could potentially distort the government's process for making a decision to

3    confer a benefit, impose a sanction, or otherwise to directly effect the interests of discrete

4    and identifiable persons or parties." *Id*. at 310.  The term "particular matter" in § 205

5    does not, however, "extend to the consideration or adoption of broad policy options that

6    are directed to the interests of a large and diverse group of persons[.]" *Id*. at 309 (internal

7    quotation marks omitted).  The D.C. Circuit concluded that under § 205 federal

8    employees are free to "voice the concerns of citizens' groups of which they are members

9    on broad policy issues" because the likelihood such actions could "divide the loyalty of

10   the employee or distort the decisionmaking process is minimal." *Id*. at 310.

11          Applying these principles, the D.C. Circuit held that while a federal employee's

12   involvement in a government decision about whether to grant a concession license to an

13   individual entity may violate § 205, an employee's advocacy relating to a broad land

14   management plan would not. *Id*. at 309.  The court reasoned that the "concreteness that

15   § 205 requires by way of a 'particular matter' is absent when a public interest group is

16   responding to an agency's call for public comment on a broad plan for land

17   management." *Id*.  This was because the plaintiff did not seek "to participate in

18   proceedings involving the granting of a license to operate a concession on public lands or

19   some similar benefit[,]" but rather the proceedings called for the public interest group's

20   views on potential environmental impacts of the proposed land plan. *Id*.  The court

21   agrees with the D.C. Circuit's interpretation of the scope of matters covered by § 205.

22   *//*

1    Applying these principles to the instant matter, the court concludes that § 205 does

2  not apply to Ms. McConnell's activities with N3C.  Ms. McConnell's N3C advocacy is

3  not sufficiently similar to participating in proceedings pertaining to the granting of a

4  license to run a concession or a related benefit.  Instead, Ms. McConnell's activities

5  illuminated to the public N3C's views as to the potential impacts of the proposed action,

6  and are more akin to the "broad policy issues" about which federal employees are "free to

7  voice the concerns of citizens' groups[.]"  *Id.* at 310.  Thus, the "proceedings at issue here

8  simply do not present the problems that Congress sought to cure as nothing in the record

9  remotely suggests that [Ms. McConnell] has a real conflict of interest or is misusing

10  government information or otherwise abusing [her] position."  *Id.* at 309-10.

11    The NLRB contends that the NPS's decision not to staff the park and to close the

12  visitor center for summer 2024 was a "concrete and particularized government decision

13  that confers a benefit on a specific, identifiable interest group—the few thousand

14  anticipated summer 2024 visitors to Stehekin."  (MTD at 7.)  The court is unpersuaded.

15  Although the staffing decision might be narrow, a "few thousand" visitors is not a small

16  number.  The visitors could be from a variety of backgrounds or there for a variety of

17  reasons, potentially representing a "large and diverse group of persons."  The court finds

18  that the benefit a visitor would receive from having access to park rangers or the visitor

19  center is not the type of matter that the statute meant to regulate.

20    Thus, the court concludes that Ms. McConnell has stated a plausible claim that she

21  did not violate § 205 because her activities do not constitute a "particular matter" under

22  § 205(h) and thus are not a "covered matter" under § 205(a)(2).

2.  <u>First Amendment</u>

Ms. McConnell's second claim is that the NLRB's interpretation of § 205 in connection to her activities with N3C violates the First Amendment.  (Compl. ¶¶ 59-62.) Ms. McConnell alleges that she is not able to participate freely and openly in N3C— such as submitting comments on behalf of N3C for Environmental Assessments and Environmental Impact Statements, meeting with NPS or USFS representatives as a N3C representative, stepping in as acting N3C President when necessary which is a requirement for the Vice President, submitting petitions to federal agencies on behalf of N3C, writing or signing op-eds on behalf of N3C, or testifying at hearings on behalf of N3C—for fear that the NLRB will deem her participation a violation of § 205 and take adverse action against her.  (*Id*. ¶¶ 49-51, 61.)

The parties agree that the test illuminated in *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, is controlling in the instant matter.  391 U.S. 563 (1968); (*see* Reply at 4). Courts use the *Pickering* balancing test to conduct a "fact-sensitive and deferential weighing of the government's legitimate interests as employer against the First Amendment rights of the employee."  *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 720 (9th Cir. 2022) (internal quotation marks and citation omitted).  The *Pickering* test has a "two-step, burden-shifting approach."  *Id*. at 721 (citation omitted).  Ms. McConnell must first establish a *prima facie* case for retaliation, namely that she engaged in expressive conduct on a matter of public concern, that government officials took adverse action against her, and that the express conduct was a substantial motivating factor for the adverse action.  *Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117,

1    1137 (9th Cir. 2025) (citation omitted).  Second, if Ms. McConnell fulfills this burden,

2    the burden shifts to the NLRB to (1) demonstrate "its 'legitimate administrative interests

3    in promoting efficient service-delivery and avoiding workplace disruption' outweigh

4    [Ms. McConnell's] First Amendment interests" or (2) show "that it would have taken the

5    same action in the absence of [Ms. McConnell's] expressive conduct."  *Id*. (citation

6    omitted).

7          The parties do not dispute that Ms. McConnell establishes a *prima facie* case of

8    retaliation.  (*See* MTD at 9; Resp. at 11-12); *see also Pickering*, 391 U.S. 563 (1968)).

9    Rather, the NLRB argues that the government's interests in avoiding the appearance of a

10   conflict of interest and staffing Stehekin Park outweigh the impact on Ms. McConnell's

11   exercise of her First Amendment Rights.  (MTD at 9.)  Ms. McConnell contends that the

12   NLRB has not and cannot present evidence that her activities "harmed any of the

13   legitimate government interests that are set out in *Pickering*[.]"  (Resp. at 12.)  The court

14   agrees with Ms. McConnell.

15         Because the NLRB does not dispute that Ms. McConnell has established the

16   required elements of a *prima facie* case, the burden shifts to the NLRB to demonstrate

17   that its legitimate administrative interests in promoting an efficient workplace and

18   avoiding workplace disruption outweigh Ms. McConnell's First Amendment interests.[3]

19   The NLRB argues that "the government has a direct and substantial interest in avoiding

20

21

22

---

[3] The NLRB does not argue that it would have taken the same actions in the absence of Ms. McConnell's expressive conduct to fulfill the second step of the *Pickering* test.  *See* MTD; *see also Damiano*, 140 F.4th at 1137 (citations omitted).

1    actual and apparent conflicts of interest among its employees" along with having a

2    "direct interest in the management of Stehekin". (*See* MTD at 9.)  Although "a

3    government entity has broader discretion to restrict speech when it acts in its role as

4    employer," any imposed restrictions must be directed at speech that could potentially

5    disrupt the entity's operations. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Damiano*,

6    140 F.4th at 1138-39; *Riley's Am. Heritage Farms*, 32 F.4th at 725.  An "even stronger

7    showing of disruption" is required by employers when the speech at issue deals with

8    "issues of public concern."  *Damiano*, 140 F.4th at 1139.

9         Here, the NLRB does not identify how Ms. McConnell's activities disrupted its

10   operations, or detail what the specific "actual and apparent conflicts of interest" are in the

11   instant matter.  The NLRB makes no showing that Ms. McConnell's activities harmed

12   any of the legitimate government interests set out in *Pickering*.  (*See generally* MTD);

13   *see also Pickering*, 391 U.S. at 569-70.  Rather, the NLRB's concerns are purely

14   speculative.  Indeed, Ms. McConnell alleges that she has served on the board and

15   advocated for N3C since 2012 and that her job with the NLRB does not involve

16   environmental or land-management issues in the North Cascades or anywhere else.

17   (Compl. ¶ 9.)  In response, the NLRB does not dispute Ms. McConnell's assertions that

18   her activities "occurred entirely outside of the workplace, did not involve any of her

19   colleagues or supervisors, and had no effect whatsoever on agency business." (*See* Resp.

20   at 12; *see also* Reply at 4.)

21        Thus, the NLRB fails to meet its burden of showing that its "legitimate

22   administrative interests in promoting efficient service-delivery and avoiding workplace

ORDER - 11

1    disruption" outweigh Ms. McConnell's First Amendment interests. *See Damiano*, 140

2    F.4th at 1137 (citations omitted).  Consequently, the court concludes that Ms. McConnell

3    sufficiently states a claim that the NLRB's application of § 205 in relation to her N3C

4    activities places a significant burden on her First Amendment rights.

5                          **IV.    CONCLUSION**

6          For the foregoing reasons, the court DENIES the NLRB's motion to dismiss (Dkt.

7    # 18).

8          Dated this <u>8th</u> day of January, 2026.

9

10                                        JAMES L. ROBART
                                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 12